UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KEVIN J. SCHMIDT and EVELINE J.
SCHMIDT

              Plaintiffs,

    -against-

MARTEC INDUSTRIES CORP and
LONGDA TECHNOLOGIES CO., LTD.

             Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 07-5020

**APPEARANCES**:

**Sanders, Sanders, Block, Woycik, Viener & Grossman, P.C.**
Attorneys for Plaintiffs
100 Herricks Road
Mineola, New York 11501
By; Stanley J. Sanders, Esq.

**Goldberg Segalla LLP**
Attorneys for Defendants
200 Old Country Road, Suite 210
Mineola, New York 11501
By: Edward V. Schwendemann, Esq.

**HURLEY, Senior District Judge**:

       Kevin Schmidt ("Plaintiff" or "Schmidt") and Eveline Schmidt (collectively "Plaintiffs") commenced this diversity action to recover monetary damages from Martec Industrial Corporation ("Martec") and Longda Technologies Corporation, Ltd., (collectively "Defendants"), for an injury suffered by Schmidt while he was riding a bicycle allegedly containing components negligently designed, manufactured, distributed, and sold by Defendants. Presently before the Court is Martec's motion pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the complaint for lack of

personal jurisdiction and Plaintiffs' cross-motion for discovery on the issue of jurisdiction or, in the alternative, for a hearing on the issue of personal jurisdiction. For the reasons stated herein, Martec's motion is denied, and Plaintiffs' cross-motion for discovery is granted.

## BACKGROUND

On December 4, 2007, Plaintiffs instituted this product liability action, alleging that Defendants were negligent in designing, manufacturing, selling, and/or distributing the component product which injured Schmidt. (Compl. ¶ 25.) According to the complaint, on or about June 10, 2006, Schmidt, a 52 year old triathlete, was severely injured while riding a bicycle in New York. The bicycle allegedly contained reinforced carbon aranid fiber forks designed, manufactured and/or sold by Martec, a Taiwanese company. (Compl. ¶ 3, 20-25.) It is claimed that fractures and cracks in the reinforced aranid carbon fiber front fork of the bicycle was responsible for its sudden stopping and the catastrophic injuries that Schmidt sustained. (Compl. at ¶¶ 24-27.)

The personal jurisdiction allegations which Plaintiffs set forth in their complaint against Martec may be summarized as follows: (1) Martec committed a tortuous act within the State of New York, (2) Martec regularly does, or solicits business in the State of New York, and (3) Martec received substantial revenue from goods used or consumed, or services rendered in the State of New York. (Compl. ¶¶ 5, 7, 9.)

In support of its motion, Martec submits the affidavit of Ivy Lin, the assistant to the Vice President of Martec. Lin's affidavit states in toto:

> 1. I am the Assistant to the Vice President of Martec Industrial Corp. and a shareholder of Martec Industrial Corp. ("Martec"). Martec is a privately owned corporation, that is not publicly traded.

> Martec has five shareholders. Martec is the English name of the corporation. It has no offices in the United States. It does not distribute any of its products within the United States. It does not have any employees within the United States.
>
> 2. Martec is a corporation registered for correspondence in Taiwan. It has thirty-five employees in Taiwan. It sells products under the Martec name. Martec does not manufacture any bicycle forks or components. It does not advertise its products for sale within the United States.
>
> 3. Martec does not have any physical presence outside of Taiwan. Martec takes orders for bicycle components based upon design specifications provided by other entities including bicycle manufacturers. Martec utilizes forwarding companies in Hong Kong. These companies then ship these components to the entities that ordered them.
>
> 4. Long Da Technologies is a manufacturing entity located in China. It has approximately 1,000 employees in China. Long Da has no physical presence outside of China. Martec is the sole shareholder of Long Da. Long Da only ships products through Martec to Hong Kong.

(Dkt. No. 32, at 5-6.)

In opposing the motion, Plaintiffs submit three documents. The first document purports to be an invoice in the amount of $5,250.00 for "bicycle parts" shipped from Martec to "Kestrel" in California. The second and third documents respectively are, according to Plaintiffs, "an internet printout evidencing shipment of Martec's products to New York ports" and "a printout from Import Genius, Inc. evidencing shipment of Martec's products to New York and other geographical areas within the Continental U.S.," (Pls.' Mem in Opp. to Martec's Motion and in Supp. of Cross-motion ("Pls.' Mem") at 7),[1] which show that Martec's shipments are routed

---

[1] The Court notes that none of these documents are authenticated. In addition, no explanation is provided as to how the information purported to be shown in the latter two documents was gathered.

from Hong Kong to New York, and that "Martec knew that its products were to be used in New York and other U.S. location." (*Id.*; Dkt. No. 32-1, Exhibits A-C.) These documents indicate shipments of Martec products originating in Hong Kong and Singapore to destinations throughout the United States, including New York, California, Washington, and Illinois, in addition to various distribution centers located within the United States. Also, Plaintiffs point out that Lin's affidavit fails to address other pertinent factors such as the regularity in which Martec takes and processes orders for bicycle components, with whom it contracts, where it negotiates such orders, and the level of solicitation Martec engages in, if any.

## DISCUSSION

### I. Standard

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Nevertheless, the plaintiff need only make a prima facie showing of jurisdiction until such time as an evidentiary hearing is held. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("'In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'") (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990); *Hoffritz for Cutlery v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metro. Life*, 84 F.3d at 566. A plaintiff may rely also on affidavits, in addition to pleadings, to meet its burden of a prima facie showing. *See In re Tamoxifen Citrate Antitrust Litig.*, 262 F. Supp. 2d 17, 21 (E.D.N.Y. 2003) (citing *Marine*

4

*Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). A court is not limited to the four corners of the complaint on a Rule 12(b)(2) motion. *Sills v. The Ronald Reagan Presidential Found., Inc.*, 2009 WL 1490852, * 5 (S.D.N.Y. May 27, 2009). Where, as here, no evidentiary hearing has been held, the court must view the pleadings in the light most favorable to the plaintiff, *see id*; when evidence is presented, "doubts are resolved in plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *accord Bohn v. Bartels*, 620 F. Supp. 2d 418, 424 (S.D.N.Y. 2007). However, the court is not bound by conclusory statements, without supporting facts. *Jazini v. Nissan Motor Co, Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998); *see also Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (courts considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth[;] [w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." ).

## II. Personal Jurisdiction

Initially it should be noted that "New York law governs personal jurisdiction over nondomiciliaries in a diversity action brought in a district court sitting in New York." *Guccione v. Harrah's Marketing Services Corp.*, 2009 WL 2337995, at *3, (S.D.N.Y. July 29, 2009). "Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302." *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 301 (E.D.N.Y. 2009).

Plaintiffs maintain that Martec is subject to jurisdiction pursuant to both N.Y. C.P.L.R.

5

301 and N.Y. C.P.L.R. 302(a)(3).  (*See* Pls.' Mem. at 4-8;  note 2 *infra*).  The Court shall consider each basis in turn.

    A.  <u>General Jurisdiction Under CPLR 301</u>

Under New York law, a defendant is subject to general personal jurisdiction in New York if they are a New York domiciliary or is deemed to be "doing business" in the State of New York. N.Y. C.P.L.R. § 301.  "A foreign defendant is doing business in New York if it is engaged in continuous, permanent, and substantial activity in New York." *Guccione*, 2009 WL 2337995, at *3 (internal quotations omitted) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990)).  "When determining whether a foreign corporation is doing business in New York, courts consider factors including: (1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the presence of bank accounts or other property in New York and (4) the presence of employees or agents in New York." *Guccione*, 2009 WL 2337995, at *3. (citing *Landoil*, 918 F.2d at 1043).

Neither the allegations in the complaint nor the documents submitted by Plaintiffs provide a basis for concluding that Plaintiffs have sustained their burden of making a prima facie case that Martec does business in New York.  The complaint merely asserts, in conclusory fashion, that Martec does business in New York.  Plaintiffs do not allege any facts or proffer evidence suggesting that Martec is "engaged in a continuous and systematic course of business in New York." *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 161 (E.D.N.Y. 2006) (internal citations omitted).  Indeed, according to the Lin affidavit, Martec has no offices or employees in New York and does not advertise its products in the United States; in fact, it has no physical presence outside of Taiwan.  Plaintiffs offer no facts to the contrary.  Given the absence of

6

factual allegations sufficient for even an inference that Martec is present in New York under C.P.L.R. 301, Plaintiffs have not met their burden of establishing a prima facie showing of jurisdiction.

B. <u>Long Arm Jurisdiction Under CPLR 302</u>

C.P.L.R. § 302(a), New York's long-arm statute, provides, in pertinent part, that

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). New York's long-arm statute does not extend to the limits of federal due process. *See In re DES Cases*, 789 F. Supp. 552, 569 (E.D.N.Y. 1992) (stating the section was "not intended to reach the limits of long arm jurisdiction allowed under the federal constitution").

Plaintiffs rely upon CPLR 302(a)(3). (Pls' Mem. at 6.)[2] Accordingly, the Court shall limit its discussion to that provision. To establish a prima facie showing of jurisdiction under

---

[2] Plaintiffs' Memorandum specifically refers to the "exercise of jurisdiction over a non-domiciliary which 'commits a tortuous act without the state causing injury to person or property within the state . . .'", although erroneously citing the section as CPLR 302(a)(4).

7

CPLR 302(a)(3), plaintiffs must show that (1) Martec committed a tortious act outside of New York that serves the basis for their claim; (2) the act caused injury in New York; (3) Martec should have foreseen that its conduct would have consequences in New York; and (4) Martec derives substantial revenue from interstate or international commerce. *See Merck Eprova AG v. Gnosis S.P.A.*, 2008 WL 5336587 (S.D.N.Y. 2008).

There appears to be no dispute that the allegations of Martec's sale of a defective product[3] constitutes a tort or that the alleged injury occurred in New York. Nor does Martec dispute that it receives substantial revenue from international commerce. In fact, Lin's affidavit supports the conclusion that Martec receives substantial revenues from international commerce. Rather the force of Martec's argument is that there is no basis to conclude that Martec should have foreseen that its conduct would have consequences in New York.

According to Martec, it could not foresee that the product it sells will have consequences in New York because the "components are sold by Martec in another country and forwarded by forwarding companies in Hong Kong. Those entities ship the components to the entities that ordered them." (Def.'s Mem. in Opp. to Cross-Mot. and in Reply to Mot. at 4). However, that Martec takes orders for its product from companies and arranges, pursuant to its customers' directions, for shipment of the product but uses a "forwarding company" to do so, rather than shipping the product itself directly, does not insulate it from foreseeing that its conduct would have consequences in the locale to which it was shipped. Here, drawing all inferences in favor of

---

[3] In its papers Martec disputes the allegation that it *manufactured* the defective part at issue and maintains that it does not manufacture any bicycle forks or components but rather merely take orders for components. (Def.'s Mem in Supp. at 2). For present purposes, the Court assume the truth of Plaintiffs' allegation.

Plaintiffs, Martec's took orders for products and pursuant to its customers' instructions had the product shipped into New York; having directed its allegedly defective product to New York a trier of fact could conclude that Martec should have foreseen that its conduct would have consequences in New York. *Cf. Merck Eprova*, 2008 %336587, at *4 *Asahi Metal Ind. Co., Ltd. v. Superior Court of Calif.*, 480 U.S. 102, 112 (1987) (mere awareness that the stream of commerce may direct the product into the forum state is insufficient under the due process clause for the exercise of jurisdiction; rather there must be evidence that the party purposefully availed itself of the market in the jurisdiction in question such as that it created, controlled or employed the distribution system that brought its product into the jurisdiction).

The Court recognizes that, as presented, the documents purporting to show that Martec shipped its product into the Untied States, including New York would not be admissible in evidence. However, their consideration is appropriate on the current motion given that a plaintiff can satisfy its burden of demonstrating a prima facie case of jurisdiction with allegations in its pleadings. *See generally Metro. Life*, 84 F.3d at 566. Moreover, the documents raise the specter of a jurisdictional issue which warrants the grant of Plaintiffs' request for discovery.

"A district court has considerable procedural leeway when deciding a motion to dismiss for lack of personal jurisdiction and may permit discovery in aid of the motion." *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (internal quotations omitted) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). "District courts have the discretion to grant discovery to explore factual issues presented by [a] Rule 12(b)(2) motion." *(888) Justice, Inc. v. Just Enterprises, Inc.*, 2007 WL 2398504, at *3, (S.D.N.Y. Aug. 22, 2007) (citing *Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56, 58 (2d Cir.1981)).

9

Here, Plaintiffs maintains that Martec, in accordance with the orders its takes, arranges for its product to be shipped into New York. Having raised a jurisdictional issue of fact, e.g., whether Martec, either itself or through the forwarding companies it employs, ships aranid carbon fiber front forks for bicycles into New York, jurisdictional discovery is appropriate. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) ("if a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction discovery is appropriate"). Once jurisdictional discovery is completed, Martec may seek leave to move for summary judgment on the issue of personal jurisdiction.[4]

## Conclusion

For the reasons set forth above, Martec's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is denied and Plaintiff's cross-motion for jurisdictional discovery is granted. Martec shall serve and file an answer within twenty (20) days of the date hereof.

Dated: Central Islip, New York
September 3, 2009

/s/
Denis R. Hurley
Senior District Judge

---

[4] At that time, the Court will also address any due process arguments.